Carithers *vs.* Venable.

R. T. CARITHERS, plaintiff in error, *vs.* DELILA M. VENABLE, defendant in error.

| 52 | 380 |
| 85 | 480 |
| 52 | 389 |
| 125 | 477 |

1. When a judgment is founded on two debts, but is for a general sum, and one of the debts properly supports the lien of the judgment, but the other does not, the lien of the judgment obtains if the two debts can be separated and distinguished.
2. A valid judgment obtained against the husband during the pendency of a suit for a divorce, founded on a debt contracted before the separation of the husband and wife, is a good lien upon property set apart to the wife on the final hearing.
3. When it affirmatively appears that a general *fi. fa.* has issued in a proceeding by attachment only, it is for the party relying on the judgment to show that the attachment had become a personal proceeding in some of the ways provided by law, nor is it sufficient proof of this to show that the defendant in the attachment was represented in the case by an attorney.   He must be notified, or replevy, or appear and make defense.
4. A sale under a general execution, issued in an attachment proceeding, without steps taken, according to the statute, to make the proceeding a personal one, is void, and the purchaser gets no title.

Judgments.   Husband and wife.   Divorce.   Attachment. Judicial sale.   Before Judge RICE.   Jackson Superior Court. August Term, 1873.

Carithers *vs.* Venable.

On the 8th day of August, 1871, Delila M. Venable commenced her action of ejectment against R. T. Carithers, who pleaded the general issue. The plaintiff relied for title on a decree of Jackson superior court in an action of divorce, in the matter of Delila M. Venable *vs.* John Venable, dated ... day of ......, 1867, decreeing to the said Delila for life, and then to her minor children, a certain house and lot in the town of Jefferson, in said county. Title in John Venable was admitted by the defendant, but he set up the following facts as showing title in himself:

On the 10th of July, 1867, one Cicero C. Thompson obtained a judgment against said John Venable, in the county court of Jackson county, for the principal sum of $383 00, besides interest and cost. Under and by virtue of a *fi. fa.* issued upon said judgment, John S. Hunter, sheriff, on the 2d of August, 1867, levied on said house and lot, and on the first Tuesday in September thereafter, sold said property to the highest bidder, when said Thompson purchased the same, and a deed was made accordingly. On the 26th of October, 1867, Thompson conveyed said property to Mary J. Thompson, who, through her agent, said Cicero C. Thompson, on the 17th of May, 1871, executed a deed to the defendant. Said sheriff, by virtue of said sale as aforesaid, placed said Cicero C. Thompson in possession of said house and lot, which said possession was transferred to, and is now in, said defendant.

The presiding judge having ruled that it was necessary for the defendant to show upon what debt or debts the judgment was founded from which said *fi. fa.* issued, he offered (besides the deeds before mentioned, and the *fi. fa.* under which said property was sold, and a *fi. fa.* in favor of P. F. Hinton against said John Venable, on which was a credit of $100 00 of the money arising from the sale of said property,) the following evidence, to-wit: a note from John Venable to W. S. Thompson & Son for $183 55, dated 10th of January, 1863, and due one day thereafter. The oral testimony of Cicero C.

Thompson, who swore that the judgment in his favor (on which the *fi. fa.* was issued, and which was levied on the property in dispute, and by virtue of which said property was sold,) was based on said note, together with an account, which account bore date subsequent to the separation of Delila M. Venable and John Venable, and which account was for board of said Delila.

E. M. Thompson swore that he was one of the firm of W. S. Thompson & Son, and that said note was a part of the claim on which said *fi. fa.* issued.

W. J. Pike swore that he was one of the firm of Davis & Pike, attorneys at law, who were employed in said cause; that the suit on which the judgment was obtained and the *fi. fa.* issued, was commenced by attachment returnable to the inferior court; that before the cause was tried, the county court was established, and the said matter was transferred to it; that W. L. Marler, the county judge, having been of counsel for Venable, was disqualified, and it was, by consent of counsel, tried by John R. Hancock, one of the judges of the inferior court; that he had searched the clerk's office for the original papers, declaration, plea, etc., and that they could not be found.

T. H. Niblack, clerk, swore that said papers were not of file in his office, nor were they of record there.

The plaintiff offered the following oral testimony in rebuttal, to-wit: That of Wyn A. Worsham, who swore that said Cicero C. Thompson, the night after the finding of the jury in the divorce case above mentioned, expressed himself as satisfied with said verdict. That of John J. McCullock, who testified as to the same facts sworn to by Worsham, and the additional fact that he said he would not sell said land under the aforesaid levy; that after said sale he expressed himself as being sorry that he had sold it, and that the defendant was in possession of the premises in dispute; that said premises were worth for rent the sum of $80 00 per annum; and, also, that of G. R. Duke, who swore that he was the agent of John Venable, with instructions to stop said sale under said levy

by affidavit of illegality; that Thompson agreed with him not to sell the same.

After the charge of the court, the jury returned a verdict for plaintiff for the premises in dispute, and $240 00 *mesne* profits.

The defendant moved the court for a new trial on the following grounds, to-wit:

1st. Because the verdict was contrary to law.

2d. Because the verdict was contrary to the evidence.

3d. Because the court erred in charging the jury, " that they had a right to inquire whether or not the *fi. fa.*; which accompanied the sheriff's deed of defendant, was founded upon a judgment in a cause commenced by attachment; and if they believed it to be an attachment judgment, they should inquire whether or not defendant in attachment had notice served on him according to law of the pendency of the attachment, or appeared personally or by attorney, and made defense to the attachment suit, or gave bond and security for the forthcoming of the property, and if the jury believed from the evidence that no one of these three means had been employed to make the judgment a general judgment, then the judgment was only a judgment against the property levied on, and not a judgment against all of defendant's property, and was therefore void, and the *fi. fa.* issued thereon void also, and the sale under it a nullity."

4th. Because the court erred in charging the jury, " That they could inquire upon what debt or debts the judgment was founded, and if they believed, from the evidence, that a part of the debt was created subsequently to the separation of John Venable and his wife, then the whole judgment is rendered of the character of the younger debt, even though a part of it was created before the separation, and would have been collectable if sued alone."

5th. Because the court erred in refusing to charge as follows: "If the jury believe that the judgment under which the land was sold in this case was founded on attachment, the *fi. fa.* being a general *fi. fa.*, it is presumed was founded on a

general judgment, and the law presumed that the court rendering the judgment did its duty, and that it had the right to enter a general judgment."

6th. Because the court refused to charge as requested, without qualification: "That the purchaser at sheriff's sale must look to the title and soundness of property sold; but a sale regularly made by virtue of judicial process, issued from a court of competent jurisdiction, shall convey the title effectually as if made by defendant in *fi. fa.*"

7th. Because the court erred in refusing to charge, without qualification, as requested: "The purchaser is not bound to inquire into the proceedings prior to the judgment, but officers of the law are presumed to have done their duty and to have acted lawfully until the contrary appears."

8th. Because the court refused to charge: "If the jury believe from the evidence in this case, that Cicero C. Thompson had a valid judgment lien against John Venable, the husband, at the time of the rendering of the decree in divorce, then the decree in divorce did not divest his judgment lien, but he had the legal right to enforce the judgment against property contained in the schedule, notwithstanding the decree."

After hearing argument on said motion, the court overruled the same, to which defendant excepted.

J. B. ESTES; W. C. HOWARD; J. C. REED; W. J. PIKE, for plaintiff in error.

SPEER & THOMAS; J. J. FLOYD; S. P. THURMOND, for defendant.

McCAY, Judge.

1. We are inclined to the opinion that the charge of the judge, to the effect that if the judgment under which this land was sold, was even in part based on a debt contracted after the separation of Mr. Venable and wife, the whole judgment would be without a lien, was not correct. Indeed, just the opposite seems to us the proper rule, to-wit: that if any part

of the judgment was for a debt contracted before the separation, the lien of the judgment would be good. The proof distinctly divides the two debts, and we are unable to see why the debt, capable of becoming a lien, should lose its character by being carried into a judgment in company with a debt not capable of becoming a lien. Were they undistinguishable there might be a good deal said in favor of this view, as it would be the plaintiff's own folly if he mingled undistinguishably his good debt with a bad one. But, as we have said, the amount and character of each is distinctly shown by the proof.

2. It is going very far to construe the divorce laws so as to tie up the property of the husband from sale by him, or from debts contracted by him after the separation. This is, however, as we held in *Venable vs. Craig,* 44 *Georgia,* 437, the provision of the Code. But the husband is, by the same section of the Code, authorized to sell, *bona fide,* in payment of pre-existing debts: Code, 1721. Our opinion is, that a *bona fide* creditor may also sue his debt to judgment, and if he gets a lien before the property is set apart to the wife by the final judgment, the lien is good—she takes subject to it. This, as it seems to us, is fair, and in harmony with the provisions of the Code. Debts existing at the time of the separation have a high equity, and if they be reduced to judgment before the rights of the wife are fixed by a judgment, they ought, we think, under the general rules of our law, giving preference to the oldest judgment, to be first paid. To say that the lien of the wife retroacts to the date of the separation, so as to take away a right then existing in creditors, to sue and get a lien, is unjust to the creditor, who contracted with no such view. We are, therefore, of opinion that were this a good judgment its superior date would give it preference to the judgment in favor of the wife.

3, 4. Had the defendant stood upon his *fi. fa.* alone, we think he would have been entitled to a verdict. *Prima facie,* in this state, an execution from a legal court is authority to sell, and it is not necessary to produce the judgment. But the defendant did not so stand. True, in undertaking to

Carithers *vs.* Venable.

show his judgment, he acted under a ruling of the judge; but he has not made that ruling a ground of error, and if he had, would hardly reverse the judge, under the facts as they appear to exist. The papers seem all to be lost, and they were never recorded. It was, however, in proof that the suit was an attachment, and the *fi. fa.* produced, and which sold the property, is a general *fi. fa.* It fails to appear that the defendant was ever served with notice, as provided by section 3309 of the Code, or that he made defense, as provided by section 3228. An attachment is only good against the property levied on, and this *fi. fa.*, if founded on an attachment only, is clearly void, since it was without notice. It appearing affirmatively by the proof that there was no regular suit, but only an attachment, a general *fi. fa.* is illegal and void. We do not agree that the issuing of a general *fi. fa.* implies notice, and that it is to be taken for granted there was notice. There are decisions to the effect that a general judgment by a court of general jurisdiction will be presumed, *prima facie*, to be founded on notice; but we know of no such rule in favor of a *fi. fa.*, or other execution. The latter is not the act of a court. It is the mere ministerial act of the executive officer of the court. In most of the states it does not even carry with it the presumption that it is based on a judgment, much less that the judgment is founded on notice. We think, in this case, therefore, that as it was made affirmatively to appear that the case was originally an attachment, it was incumbent on the purchaser to show how the *fi. fa.* became a general one. This he utterly failed to do, and the judge was right in his instructions to the jury on this point. There being a total failure of the proof, the verdict of the jury was necessarily for the plaintiff. If there was no notice, the judgment was void, and the sale void. The purchaser took nothing. A purchaser is protected against an irregular judgment, but not under a judgment without notice to the defendant. The mere fact of the presence of an attorney of the defendant is not enough to supersede the necessity of notice; the defendant must make defense: See *Ross vs. Edwards*, 52 *Georgia*,

24. An attorney might stand by and see that the case was made out, or he might *attack* the attachment. Under the law, therefore, we think the verdict right—necessary—under the proof, and the error of the judge as to the effect of the judgment, if a good one, immaterial.

Judgment affirmed.